**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALBERT DUBAS,** | : | **No. 3:11cv1402** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **OLYPHANT POLICE DEPARTMENT,** | : | |
| **BOROUGH OF OLYPHANT, POLICE** | : | |
| **CHIEF JOHN GILGALLON, OFFICER** | : | |
| **ROLAND J. ALUNNI and OFFICER** | : | |
| **LEWIS KLINE,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Albert Dubas initiated the instant action against Defendants Olyphant Police Department, Borough of Olyphant, Police Chief John Gilgallon, Officer Roland J. Alunni and Officer Lewis Kline (hereinafter "defendants") on July 28, 2011. (Doc. 1). Plaintiff Albert Dubas's complaint alleges civil rights claims pursuant to 42 U.S.C. § 1983 and the Pennsylvania common law. Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 7, 2011. (Doc. 6). For the following reasons, the court will grant defendants' motion in part and deny it in part.

**Background**

On August 31, 2009 at approximately 3:30 p.m., Lackawana County Emergency Services received a call that a man brandished a handgun on Lemko Street, near Kimberly Circle, in the Borough of Olyphant. (Doc. 1, Compl. (hereinafter "Compl.") ¶¶ 13-14, 16). Defendant Police Chief John Gilgallon (hereinafter "Gilgallon"), a member of Defendant Olyphant Police

Department (hereinafter "Olyphant PD"), responded to the call while on his way home.[1]  (Id. ¶¶ 8, 15-16).  Gilgallon was the first officer on the scene.  (Id. ¶ 15).  Gilgallon recognized plaintiff, who was sitting in his van with a female friend.  (Id. ¶ 17).  Plaintiff's van was parked on Lemko Street.  (Id.)

Gilgallon allegedly approached the van, opened the driver's side door, grabbed plaintiff by the collar, and said, "Al we had a complaint of a guy waiving a gun, I hope the hell it ain't you, get out of the van."  (Id. ¶¶ 18-19).  Gilgallon told plaintiff that he "better not have a gun.  This is the last straw."  (Id. ¶ 19).  Gilgallon then arrested plaintiff.  (Id.)

Other Olyphant PD officers arrived, including Defendant Officer Roland J. Alunni (hereinafter "Alunni") and Defendant Officer Lewis Kline (hereinafter "Kline").  (Id. ¶ 20).  Kline and Alunni transported plaintiff to the police station.  (Id.)  Without requesting plaintiff's consent, Gilgallon searched the van.  (Id. ¶¶ 21-23).  After a fifteen minute search, Gilgallon did not find any weapons in the van.  (Id. ¶ 24).  While he was conducting the search, plaintiff's friend told Gilgallon that "Al did not have a gun.  Someone was pulling their chain."  (Id.)

---

[1] The complaint and the documents filed with the complaint do not allege (1) that the eyewitness who called the police specifically implicated plaintiff or (2) that Gilgallon was aware of any such description prior to arresting plaintiff.  As is consistent with our standard of review, the court will consider all well-pled allegations of the complaint when evaluating this motion.  Thus, we will not view defendants' factual claim that Gilgallon "received eyewitness reports of the fact that Plaintiff had been waiving a gun" (Doc. 16, Supplemental Br. in Supp. of Mot. to Dismiss at n.1), in the same light as the factual allegations plaintiff makes in the complaint.

Gilgallon responded that "other people from his development are complaining about Al, therefore there must be some truth to the complaints."  (Id.)  Plaintiff alleges that prior to this incident, unidentified members of the Olyphant PD told plaintiff "that if he did not stop complaining about problems on his property near Kimberly Circle that he would be arrested for harassment" and that "if people in his development kept complaining he would be arrested for harassment."  (Id. ¶¶ 34-35).

Defendants had plaintiff's car impounded and a subsequent search did not reveal a weapon.  (Id. ¶ 26).  The Olyphant PD held plaintiff for approximately five hours, after which time he was taken to a preliminary arraignment before Magisterial District Judge Robert G. Russell.  (Id. ¶ 27; Doc. 7-2, Ex. 2, Crim. Doc. Sheet).  Later, and with the advice of his attorney, plaintiff granted the Olyphant PD permission to search his home.  (Compl. ¶ 28).  Alunni went to plaintiff's home and found and seized a "blued" .22 caliber revolver on his counter-top.  (Id. ¶ 29).  Plaintiff's mother allegedly told Alunni that the gun remained in their home all day on August 31, 2009.  (Id. ¶¶ 30-33).  Plaintiff maintains that the "blued" gun found at his home does not match the eyewitnesses description of a silver handgun.  (Id. ¶¶ 25, 37).

The Commonwealth of Pennsylvania charged plaintiff with simple assault and harassment, and his case was transferred to the Lackawanna County Court of Common Pleas on September 10, 2009 after a preliminary hearing before Magisterial District Judge John P. Pesota.  (Doc. 7-2, Ex. 2,

Crim. Doc. Sheet).  Plaintiff filed a petition for a writ of habeas corpus on December 3, 2009, and Judge Michael Barrasse held a hearing on the petition on January 15, 2010.  (Id.; Compl. ¶¶ 38-39).  On February 17, 2010, Judge Barrasse ordered that the charges against plaintiff be *nolle prossed* for lack of prosecutorial evidence.  (Doc. 1-1, Ex. A, Order Dated Feb. 17, 2010; Compl. ¶ 39).  Plaintiff alleges that Kline, Gilgallon and Alunni misrepresented important exculpatory evidence when they testified against him at both his preliminary hearing and his hearing on the petition for habeas corpus.  (Compl. ¶¶ 40-44).

The instant complaint contains five counts.  In Count I, plaintiff alleges malicious prosecution claims under 42 U.S.C. § 1983 against Gilgallon, Alunni and Kline in their individual capacities.  (Id. ¶¶ 50-58).  In Count II, plaintiff alleges that he was subject to a search and seizure in violation of his Fourth Amendment rights and that Gilgallon, Alunni and Kline are liable under 42 U.S.C. § 1983 in their individual capacities.  (Id. ¶¶ 59-64).  In Count IV,[2] plaintiff asserts civil rights claims against all defendants pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).  (Id. ¶¶ 65-69).  In Count V, plaintiff brings false arrest/imprisonment claims against Gilgallon, Alunni and Kline under Pennsylvania state law.  (Id. ¶¶ 70-73). In Count VI, plaintiff alleges malicious prosecution claims against Gilgallon, Alunni and Kline under Pennsylvania state law.  (Id. ¶¶ 74-78).  For the following reasons, the court

---

[2] "Count III" is omitted from the complaint.

will grant defendants motion in part and deny it in part.

**Jurisdiction**

Plaintiff asserts civil rights claims under 42 U.S.C. § 1983 (hereinafter "Section 1983").  The court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The court has jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Defendants brings this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).  When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint are tested.  All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will

5

reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'"  McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Twombly, 550 U.S. at 555-56).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

Defendants contend that plaintiff's complaint should be dismissed because it fails to state a claim for which relief can be granted. Defendants advance several arguments supporting this contention, specifically they argue that plaintiff's claims are either impermissible as a matter of law or clearly contradictory to the facts of the case. For the following reasons, defendants' motion will be granted in part and denied in part.

**I.   Monell Claims Against All Defendants**

In Count IV of the complaint, plaintiff contends that all defendants are liable pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978) for alleged civil rights violations caused by official borough policies and

customs.  Defendants assert that plaintiff's <u>Monell</u> claims against Defendants Olyphant PD, Borough of Olyphant (hereinafter "the Borough"),  Gilgallon, Kline and Alunni are defective as a matter of law and must be dismissed.  The court will examine the legal sufficiency of plaintiff's claim against the Olyphant PD, plaintiff's official capacity claims against Gilgallon, Kline and Alunni, and plaintiff's claims against the Borough in turn.

### A.    Claims Against Defendant Olyphant Police Department

Plaintiff names the Olyphant PD as a defendant in the complaint and asserts that it is liable to plaintiff for its alleged civil rights violations.  Plaintiff also alleges civil rights claims under Section 1983 against the Borough. Defendant contends that the Olyphant PD must be dismissed as a party because a municipality and its police department are treated as the same entity for the purposes of a Section 1983 action.  <u>See</u> <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 n.4 (3d Cir. 1997) ("[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability.").  Plaintiff concurs with defendants' assertion that the claims against the Olyphant PD should be dismissed.  (Doc. 10, Pl.'s Mem. in Opp'n to Mot. to Dismiss at 4).  Thus, the court will grant defendants' motion to dismiss with respect to the Olyphant PD.

### B.  Official Capacity Claims Against Officer Defendants

Defendants assert that the official capacity claims against Gilgallon, Kline and Alunni (collectively the "officer defendants") must be dismissed in

light of plaintiff's claims against the Borough.  Defendants argue that the

official capacity claims against the officer defendants are duplicative of the

claims against the Borough because official capacity claims are equivalent to

claims against the municipality.  The law is well established on this point, and

courts sitting in the Third Circuit have dismissed defendants sued in their

official capacity when the same claims are made against the municipality.

See Whaumbush v. City of Phila., 747 F. Supp. 2d 505, 510 n.2 (E.D. Pa.

2010) (dismissing claims against defendants in their official capacity as

duplicative of the civil rights claims against the municipality); Strickland v.

Mahoning Twp., 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (stating that an

official capacity suit is "generally merely another way of pleading an action

against an entity of which an officer is an agent." (citing Kentucky v. Graham,

473 U.S. 159, 165 (1985))).  As such, the official capacity claims against

Gilgallon, Kline and Alunni will be dismissed as duplicative of the claims

against the Borough.

### C. Claims Against Defendant the Borough of Olyphant

Plaintiff asserts civil rights claims against Defendant the Borough of

Olyphant pursuant to Monell v. Department of Social Services, 436 U.S. 658

(1978).  Under Monell, Section 1983 civil rights claims cannot be maintained

against municipalities on the theory of respondeat superior.  Monell, 436 U.S.

at 694.  Rather, the Supreme Court ruled that a government is only liable

under Section 1983 when the "execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [the] injury . . . ." Id.

Courts have clarified that municipalities can be liable under Section 1983 for the civil rights violations of its employees in the following three situations:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, Jett v. Dallas Independent School District, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).  In the instant case, plaintiff asserts that the Borough is liable pursuant to the second situation mentioned above; therefore, the question before the court is whether Chief Gilgallon has policy making authority as to render his behavior an act of government custom or policy.[3]

State law governs whether a municipal official has final policy making

-----

[3] At our oral argument, plaintiff clarified that Gilgallon's actions as the police chief constitute the sole basis for his Section 1983 claim against the Borough.  Thus, plaintiff effectively abandoned an earlier articulated argument that the Borough is liable under Section 1983 for failing to train its officers. (See Doc. 10, Pl.'s Mem. in Opp'n to Mot. to Dismiss at 6).

authority.  See Santiago v. Warminster Twp., 629 F.3d 121, 135 n.11 (3d Cir. 2010).  The situation presented to the court in Santiago is similar to the facts underlying the instant case.  In Santiago, the plaintiff asserted that the police chief for a township was the final policy maker for the purposes of imposing Section 1983 liability on the township under Monell.  Id. at 129.  The Third Circuit Court of Appeals upheld the district court's finding that the claims against the municipality should be dismissed because the plaintiff had not pled sufficient facts regarding the police chief's policy making authority.  Id. at 134-35.  The court also noted that, as a matter of Pennsylvania state law, a township police chief does not have final policy making authority.  Id. at 135 n.11.  The court examined Pennsylvania law and found that the law vested authority and supervision over a township's police officers with the township board of supervisors.  Id.; 53 PA. CONS. STAT. ANN. § 66902.  The court also noted that "the Supreme Court has forbidden courts from 'assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.'"  Id. (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 125 n.1, 126 (1988)).

The court requested that the parties address this issue in supplemental briefs.  In his supplemental brief, plaintiff attempted to draw factual distinctions between the police chief's conduct in Santiago and the instant case.  Furthermore, plaintiff relied on the marginally relevant Third Circuit Court of Appeals decision of McGreevy v. Stroup, 413 F.3d 359 (3d Cir. 2005)

as legal support for his proposition that Gilgallon was acting as the final policymaker.[4]

The court disagrees with plaintiff and finds that borough police chiefs do not have final policy making authority under Pennsylvania law.  Pennsylvania law is unambiguous:  "[t]he mayor of the borough shall have full charge and control of the chief of police and the police force . . . ."  53 PA. CONS. STAT. ANN. § 46121; see also Commonwealth of Pennsylvania v. Porter, 659 F.2d 306, 310 (3d Cir. 1981) ("Thus the Mayor of a Pennsylvania borough is its chief law enforcement officer, charged with the responsibility of supervising the manner in which the police department functions, with ample authority to control the conduct both of the chief of police and of all police officers."). Chief Gilgallon does not have final policy making authority as a matter of Pennsylvania law.  The court will dismiss plaintiff's claims against the Borough as these claims were premised solely on plaintiff's contention that Gilgallon was the final policy maker.

## II.    Individual Capacity Claims Against the Officer Defendants

Plaintiff alleges that Defendants Gilgallon, Kline and Alunni are liable in their individual capacity for several civil rights violations.  Specifically, plaintiff claims that the officer defendants are subject to liability pursuant to Section

---

[4] McGreevy assessed whether a public school superintendent is a final policymaker under Pennsylvania law with respect to teacher ratings determinations.  McGreevy 413 F.3d at 368-69.  McGreevy does not address law enforcement officers.

1983[5] for malicious prosecution (Count I) and for conducting a search and seizure in violation of the Fourth Amendment (Count II).  Plaintiff also claims that these individual defendants are subject to liability under Pennsylvania state law for the torts of false imprisonment/arrest (Count V) and malicious prosecution (Count VI).

Defendants present three arguments in support of their contention that plaintiff's independent claims against the officer defendants should be dismissed as a matter of law.  First, defendants contend that the officer defendants acted without probable cause, which is a necessary element for all of the claims against the officer defendants.  Second, defendants assert that plaintiff has failed to adequately plead that the officer defendants acted with malice, which is a required element with respect to the federal and state law malicious prosecution claims.  Third, defendants maintain that the officer defendants are entitled to qualified immunity.  The court will address these arguments in turn.

---

[5] Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

## A. Adequacy of the Pleadings - Probable Cause

Defendants contend that all claims against Gilgallon, Alunni and Kline in their individual capacities must be dismissed because the complaint reflects that defendants possessed sufficient probable cause to arrest, detain, search and prosecute plaintiff.  Probable cause is a required element in all of the individual capacity claims plaintiff brings against the officer defendants.[6]  As is

---

[6] To prevail in establishing a Fourth Amendment malicious prosecution claim under Section 1983, plaintiff must show: (1) that the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant must have acted maliciously or for a purpose other than to bring the plaintiff to justice; and (5) the plaintiff must have suffered a deprivation of liberty.  Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  Similarly, with respect to his Pennsylvania common law tort claim for malicious prosecution, plaintiff must establish the first four elements of a Fourth Amendment malicious prosecution claim; however, plaintiff need not prove the fifth element–a deprivation of liberty–to prevail on a claim for malicious prosecution under Pennsylvania state law.  See id. at 198 n.14; Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000).

To succeed in proving his Section 1983 for an unlawful search and seizure in violation of the Fourth Amendment, plaintiff must show that a search and/or seizure was conducted by an official who lacked probable cause.  Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988).

With respect to claims for false imprisonment and false arrest, Pennsylvania courts have noted that "'false arrest and false imprisonment are said to be distinguishable only in terminology.'"  Simmons v. Poltrone, No. 96-8659, 1997 WL 805093, at *7 (E.D. Pa. Dec. 17, 1997) (quoting Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, The American Law of Torts, § 27:2, at 940-41 (1990)).  It is well established that the "elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is

such, the adequacy of plaintiff's pleadings with respect to probable cause–or lack thereof–is determinative of whether plaintiff's individual capacity claims will be dismissed.

The Third Circuit Court of Appeals has found that "probable cause is a fluid concept" that turns on "the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." United States v. Shields, 458 F.3d 269, 277 (3d Cir. 2006) (citing Illinois v. Gates, 462 U.S. 213, 232 (1983)). Although there is no precise definition for probable cause, our Circuit Court of Appeals guides us that government officials possess sufficient probable cause when (1) there is a reasonable ground for belief of guilt determined from the totality of the circumstances, and (2) the belief of guilt is particularized with respect to the individual searched or seized. See United States v. Mackie, 190 F. App'x 178, 180 (3d Cir. 2006) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

In the instant case, defendants cite two reasons in support of their claim that they possessed probable cause. First, defendants contend that Magisterial District Judge Pesota's determination that a prima facie case existed at the preliminary hearing is determinative on the issue of probable cause. Second, defendants assert that, even if the magistrate judge's finding

---

unlawful. 'An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not.'" Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)).

of probable cause is not controlling, plaintiff does not adequately allege a lack of probable cause.  The court disagrees on both points.[7]

With respect to the first argument, defendants contend that, like the district courts in Domenech v. City of Philadelphia and Payson v. Ryan, we should agree with the finding of probable cause made by the magisterial district judge at the preliminary hearing. See Domenech v. City of Phila., No. 06-1325, 2009 WL 1109316, at *10 (E.D. Pa. April 23, 2009); Payson v. Ryan, No. 90-1873, 1992 WL 111341, at *12 (E.D. Pa. May 12, 1992).  We disagree and find that the facts of the instant case are factually distinguishable from these cases.  In Domenech, the court held that the defendant's motion for summary judgment should be granted because the plaintiff could not prove a lack of probable cause.  Domenech, 2009 WL 1109316, at *10-11.  The court agreed with the municipal court's decision that probable cause existed after the court evaluated the evidence.  Id.  In Payson, the court granted the defendant's motion for summary judgement after reviewing the record and finding that the defendants acted with probable cause as a matter of law.

---

[7] Defendants also argued that the Third Circuit Court of Appeal's reasoning in Stewart v. Abraham, 275 F.3d 220 (3d Cir. 2001) is dispositive with respect to the amount of weight courts hearing Section 1983 suits should give to findings of probable cause at preliminary hearings.  Stewart involves a challenge to Philadelphia's "re-arrest" policy, specifically whether probable cause can exist for a second arrest after the Commonwealth failed to establish a prima facie case in a preliminary hearing after the first arrest.  See id. at 229.  The holding in Stewart does not control our analysis–Stewart does not address whether findings of probable cause at a preliminary hearing preclude future civil suits that allege a lack of probable cause.

Payson, 1992 WL 111341, at *12.  The court granted the defendant's motion for summary judgment, in part, because "a plaintiff is collaterally estopped from denying that there was probable cause to believe he committed a crime when, after he had a ***full and fair opportunity*** to litigate the issue in an earlier state court proceeding, a judge found probable cause to bind him over for trial."  Id. (emphasis added) (citing Coogan v. City of Wixom, 820 F.2d 170, 175 (6th Cir. 1987)).

The instant case, unlike Domenech and Payson, is at a very early stage in the litigation.  The courts in Domenech and Payson were able to decide the defendants' motion for summary judgment and evaluate the magistrate judges' preliminary determinations of probable cause with the benefit of fully developed records.  Additionally, unlike the court in Payson, we cannot find, at this time, that plaintiff had a "full and fair opportunity" at the preliminary hearing to litigate the issue of whether the officer defendants possessed probable cause.  Such a determination is not possible at this early stage because plaintiff alleges that the officer defendants misrepresented evidence at the preliminary hearing, (Compl. ¶¶ 40-43), and our standard of review requires that we view this allegation as true.

With respect to the second argument, the court does not agree that "no plausible claims exist under Counts I - II, and V - VI, but, at most, the mere possibility of misconduct."  (Doc. 16, Supplemental Br. in Supp. of Mot. to Dismiss at n.1).  As is stated above, plaintiff alleges that defendants searched

his van, arrested him and encouraged his prosecution based on the sole fact that he was near the location where a witness claimed that a man had shown a gun.  (See Compl. ¶¶ 19-20, 23-24, 36-37).  Plaintiff alleges that the police possessed scant corroborating evidence to indicate that he was the man who made the threatening gesture, and, if anything, the evidence weighed against a finding of probable cause because the gun later found in his home did not match the witnesses description of the weapon.  (See id. ¶¶ 25, 29, 37).

Although defendants claim that "the investigating officer received eyewitness reports of the fact that Plaintiff had been waiving a gun," this fact is not clearly alleged in plaintiff's complaint.  Rather, the alleged statements Gilgallon made as he arrived on the scene indicate that he was unaware of who was accused of brandishing a handgun.[8]  (See Compl. ¶ 19).  Similarly,

---

[8] Although it is not attached as an exhibit to the pleadings, the court also notes that the excerpt of Gilgallon's testimony at the January 15, 2010 hearing before Judge Barrasse does not conclusively establish whether eyewitnesses specifically told Gilgallon that plaintiff was the one with the handgun.  (See Doc. 10, Gilgallon Tr.).  Gilgallon testified that he responded to the scene because he "heard Com. Center dispatch, area 26 to Lemko Street in the area of Kimberly Circle for a male brandishing a handgun."  (Id. at 19).  Gilgallon did not testify that plaintiff was identified in the dispatch, rather he testified that he approached plaintiff's van because he saw it in the vicinity of Lemko Street.  (Id.)  Although Gilgallon testified on cross-examination that members of a crowd on the scene stated that plaintiff had a gun, this statement must be weighed along with Gilgallon's admission that he did not know how long the crowd had been there and that they might have arrived when they saw a marked police cruiser on the scene.  (Id. at 26, 30).  Therefore, the totality of the vague circumstance presented in the excerpt of Gilgallon's testimony are insufficient, at this stage in the litigation, to rebut the

defendants' assertion that "Plaintiff's gun was found in close proximity to the scene," is inconclusive on the issue of whether defendants had probable cause.  The discovery of a different colored handgun in plaintiff's home does not establish that defendants acted with probable cause at all times because the police did not find plaintiff's gun until after plaintiff was already arrested and his van was searched.  Therefore, the court cannot find that the totality of the circumstances warrants a finding that probable cause exists as a matter of law–the complaint states plausible facts that, if found to be true during discovery, establish the officer defendants' lack of probable cause.

### B.  Adequacy of the Pleadings - Malice

Defendants also contend that the state and federal law malicious prosecution claims should be dismissed because plaintiff has not adequately pled facts to support the required element of malicious intent.  Establishing malicious intent is an element of a malicious prosecution claim under both the Fourth Amendment to the United States Constitution and Pennsylvania state law.  See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000). To meet the malice requirement, the plaintiff must plead that the defendant acted with malice or with a purpose other than to bring the plaintiff to justice. DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005).

In the instant case, plaintiff has pled that members of the Olyphant PD have a bias against him because of disputes with his neighbors.  (See Compl.

_____

allegations presented in the complaint.

¶¶ 34-35).  Plaintiff also pled that the officer defendants, without probable

cause, arrested him, searched his van, encouraged his prosecution and

misrepresented the facts of the case at the preliminary hearing.  (See Compl.

¶ 37).  These allegations, if true, amount to circumstantial evidence of

malicious intent, and they support the reasonable expectation that discovery

will reveal enough evidence to establish the element of malicious intent.

Therefore, the court disagrees with defendants and finds that plaintiff pled

adequate facts with respect to the element of malicious intent.

## C.  Qualified Immunity

Defendants contend that the officer defendants are entitled to qualified

immunity as well.  Qualified immunity can serve as a defense for those

government officials accused of civil rights violations.  See Hunter v. Bryant,

502 U.S. 224, 227 (1991).  Courts employ a two step process to assess

whether defendants are entitled to qualified immunity: "[f]irst, we must

determine whether the defendants violated 'clearly established' rights . . . .

[s]econd, we determine whether a reasonable officer would have believed that

his or her conduct deprived the plaintiff of his or her constitutional rights."

Harvey v. Plains Twp. Police Dept., 421 F.3d 185, 192 (3d Cir. 2005) (citing

Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998)).  In other words:

> Qualified immunity insulates from civil liability government officials
> performing discretionary functions insofar as "their actions could
> reasonably have been thought consistent with the rights they are
> alleged to have violated."  Anderson v. Creighton, 483 U.S. 635,
> 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  In assessing a claim
> of qualified immunity, we must review the law relevant to the

official's behavior and ask whether the official could have believed that his or her actions were justified by law. See Good v. Dauphin Cty. Soc. Servs., 891 F.2d 1087, 1094 (3d Cir.1989). The second part of this inquiry contains two components. To overcome the defense of qualified immunity, (1) the facts, "[t]aken in the light most favorable to the party asserting the injury, [must] show the officer's conduct violated a constitutional right," Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), and (2) "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640, 107 S.Ct. 3034.

Forbes v. Twp. of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002). Since we are at the motion to dismiss stage, we will take the plaintiff's version of the facts as true and apply the two-step qualified immunity test. See Morse, 132 F.3d at 906 (explaining that in deciding a motion to dismiss, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn from them).

As is discussed above, plaintiff has alleged that Gilgallon, Alunni and Kline violated his Fourth Amendment rights. Plaintiff alleged that they arrested him without probable cause, (Compl. ¶¶ 19-20, 37), searched his van with neither probable cause nor his consent, (Id. ¶¶ 23-24), initiated criminal proceedings against him without probable cause, (Id. ¶¶ 36-37), misrepresented evidence at plaintiff's preliminary hearing, (Id. ¶¶ 40-44), and that the criminal proceedings maliciously brought against him ended in his favor, (Id. ¶ 39). These alleged facts underlie plaintiff's Fourth Amendment claims. The first step of our qualified immunity analysis is satisfied.

Next, the court must determine whether reasonable officers would have

known that these alleged actions violated plaintiff's rights.  "Qualified immunity

is defeated if an official 'knew or reasonably should have known that the

action he took within his sphere of official responsibility would violate the

constitutional rights of [plaintiff], or if he took the action with the malicious

intention to cause a deprivation of constitutional rights or other injury.'"

Forbes, 313 F.3d at 148 (quoting Wood v. Strickland, 420 U.S. 308, 322

(1975)).  The United States Supreme Court has explained this portion of

qualified immunity analysis as follows:

> A Government official's conduct violates clearly established law
> when, at the time of the challenged conduct, the contours of a
> right are sufficiently clear that every reasonable official would have
> understood that what he is doing violates that right.  We do not
> require a case directly on point, but existing precedent must have
> placed the statutory or constitutional question beyond debate.

Ashcroft v. al-Kidd, — U.S. —, 131 S. Ct. 2074, 2083 (2011) (internal

punctuation and citations omitted).

With respect to the instant case, any reasonable officer would know

that it violates the Fourth Amendment to arrest, search, and prosecute an

individual absent probable cause.  Defendants argue that they are entitled to

qualified immunity because (1) "the facts of this case clearly establish that

there was probable cause to arrest Plaintiff and charge him with simple

assault and harassment," and (2) the officer defendant's actions were

objectively reasonable because of "the reports that [plaintiff] may have been

brandishing a gun at or near the time of his arrest."  (Doc. 7, Mem. of Law in

Supp. of Mot. to Dismiss at 11).

As is noted above, the court is bound in its analysis by the facts alleged in the complaint, and the complaint does not allege facts that "clearly establish" probable cause.  The complaint does not allege that plaintiff was the individual spotted brandishing the handgun.  The complaint merely alleges that the police received a call that a male was brandishing a handgun on Lemko Street and that plaintiff was parked on Lemko Street at that time. Compl. ¶¶ 13, 16).  Although discovery may reveal evidence establishing defendants' claim that Gilgallon, Alunni and Kline acted with probable cause, it would be inappropriate at this stage in the litigation for the court to infer that were the case and apply qualified immunity.  Accordingly, defendants' motion to dismiss the claims against Gilgallon, Alunni and Kline in their individual capacity will be denied.

### III.  Claims for Punitive Damages

Defendants also assert that the punitive damages against Gilgallon, Alunni and Kline should be dismissed.  The Supreme Court of Pennsylvania has explained the punitive damages standard as follows:

> "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747 (1984) (quoting Restatement (Second) of Torts § 908(2) (1979)); see also Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355, 358 (1963).  As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.  See SHV Coal, Inc. v. Continental Grain Co., 526 Pa. 489, 587 A.2d 702, 704 (1991); Feld, 485 A.2d at 747-48; Chambers, 192 A.2d at 358.  See also Restatement (Second) of Torts § 908, comment b.  The purpose

of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. <u>Kirkbride v. Lisbon Contractors, Inc.</u>, 521 Pa. 97, 555 A.2d 800, 803 (1989); Restatement (Second) of Torts § 908 (1) ("Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.").

<u>Hutchinson ex rel. Hutchinson v. Luddy</u>, 870 A.2d 766, 770 (Pa. 2005).  In the specific context of a Section 1983 suit, a plaintiff can claim punitive damages if a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983).  In Section 1983 actions, punitive damages are not available against state actors in their official capacities, but punitive damages are available against an official sued in his personal (or individual) capacity.  <u>Graham</u>, 473 U.S. at 167 n.13.

After reviewing the facts in the complaint, we find that sufficient allegations have been made for the punitive damages claim to withstand a motion to dismiss.  Plaintiff alleges, in part, that the individual defendants abused their power as officers of the law and knowingly searched, arrested and prosecuted plaintiff without probable cause.  (Compl. ¶¶ 21-23, 27, 37, 44).  If these allegations are proven true, they would amount, at a minimum, to a callous indifference to plaintiff's federally protected rights.  Accordingly, defendants' motion to dismiss with respect to plaintiff's claims for punitive damages will be denied.

24

**Conclusion**

For the above-stated reasons, defendants' motion to dismiss will be granted in part and denied in part.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALBERT DUBAS,** | : | **No. 3:11cv1402** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **OLYPHANT POLICE DEPARTMENT,** | : | |
| **BOROUGH OF OLYPHANT, POLICE** | : | |
| **CHIEF JOHN GILGALLON, OFFICER** | : | |
| **ROLAND J. ALUNNI, and OFFICER** | : | |
| **LEWIS KLINE,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 20th day of April 2012, Defendants' motion to dismiss plaintiff's complaint (Doc. 6) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Defendants' motion to dismiss Defendant Olyphant Police Department is **GRANTED**;

2. Defendants' motion to dismiss the official capacity claims against Defendants Police Chief John Gilgallon, Officer Roland Alunni and Officer Lewis Kline is **GRANTED**;

3.  Defendants' motion to dismiss the claims against the Borough of Olyphant is **GRANTED**;

4.  Defendants' motion to dismiss with respect to all other aspects of plaintiff's complaint is **DENIED**.

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**